IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHELLE Q. SHERIFF, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION NO. 3:12-cv-243 |
| | ) | JUDGE KIM R. GIBSON |
| v. | ) | |
| | ) | |
| STATE FARM INSURANCE COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

### I. SYNOPSIS

This matter comes before the Court on Defendant's Motion to Dismiss Plaintiff's Complaint ("Motion to Dismiss" or "Motion") for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6) (Doc. No. 6). Plaintiff opposes Defendant's Motion. (See generally Doc. No. 12.) For the reasons that follow, Defendant's Motion is **GRANTED WITH LEAVE TO AMEND**.

### II. JURISDICTION

This Court exercises subject matter jurisdiction over Plaintiff's claim pursuant to 42 U.S.C. § 12117 and 28 U.S.C. §§ 1331, 1343(a)(4). Venue is proper pursuant to 28 U.S.C. § 1391(b).

### III. FACTUAL AND PROCEDURAL BACKGROUND[1]

This case arises from Defendant's alleged disclosure of confidential medical information regarding Plaintiff to three prospective employers. (Doc. No. 1 at 3 ¶¶ 13, 20.) Plaintiff suffers

---
[1] In light of the procedural posture of this case, the Court accepts as true the factual allegations of Plaintiff's Complaint. See infra Part IV.

1

from bipolar disorder and qualifies as a disabled person under the Americans with Disability Act ("ADA"). (*Id.* at 2 ¶ 6.) From November 2009 until late 2010, Plaintiff worked for Kim Springer, an independent agent who sells State Farm insurance, at the Kim Springer Agency. (*Id.* at 2 ¶ 7.) The corporate office of Defendant State Farm serves as an employment agency for individuals seeking employment with independent agents who sell State Farm insurance. (*Id.* at 2 ¶ 9.) Chrissy Gump, a field representative employed by Defendant, assists in placing prospective employees with independent agents in need of employees. (*Id.* at 2 ¶ 10.) After Plaintiff's employment with the Kim Springer Agency ended in late 2010, Plaintiff contacted Ms. Gump regarding employment vacancies with other agents who sell State Farm insurance. (*Id.* at 3 ¶ 11.) Ms. Gump provided Plaintiff with a list of hiring agents. (*Id.* at 3 ¶ 12.)

At some point, and without Plaintiff's permission, Ms. Springer shared information about Plaintiff's medical condition—including the history and record of Plaintiff's condition—with Ms. Gump. (*Id.* at 2 ¶ 8.) After providing Plaintiff with a list of hiring agents, Ms. Gump then contacted three agencies with which Plaintiff was scheduled to interview and provided information regarding Plaintiff's medical condition. (*Id.* at 3 ¶ 13.) Ms. Gump, like Ms. Springer, also shared this information without Plaintiff's permission. (*Id.*) Ms. Gump allegedly provided this information to the agents to inform them that Plaintiff would require medical insurance if hired. (*Id.* at 3 ¶ 14.) Subsequently, none of the three agents hired Plaintiff. (*Id.* at 3 ¶ 15.) Plaintiff alleges that the agents disregarded her experience and education and did not hire her because Ms. Gump disclosed confidential medical information about Plaintiff's disability to them. (*Id.* at 3 ¶¶ 15-16.)

Plaintiff filed a charge with the Equal Employment Opportunity Commission and was issued a Notice of Right to Sue on August 30, 2012. (*Id.* at 1 ¶ 2.) Plaintiff filed her Complaint

(Doc. No. 1) on November 27, 2012. Plaintiff's Complaint contains a single count in which she asserts a claim for a violation of section 102(d) of the ADA, codified at Title 42, section 12112(d)(4)(C). Specifically, Plaintiff alleges that Defendant failed to maintain the confidentiality of her medical information by sharing Plaintiff's medical history with the three independent agents with whom Plaintiff was seeking employment. (See *id.* at 3 ¶ 20.) Plaintiff seeks compensatory damages, punitive damages, back pay, and reasonable attorney fees; Plaintiff also seeks a judgment enjoining Defendant from discriminating or retaliating against Plaintiff in any manner prohibited by the ADA. (See *id.* at 4 ¶ 21.)

On January 28, 2013, Defendant filed a Motion to Dismiss (Doc. No. 6), accompanied by a Brief in Support (Doc. No. 7). Plaintiff filed a brief opposing Defendant's Motion (Doc. No. 12) on February 25, 2013 (the "Brief in Opposition"). Defendant filed a Reply to Plaintiff's Brief in Opposition (Doc. No. 21) on March 8, 2013. Defendant's Motion is now ripe for disposition.

## IV. STANDARD OF REVIEW

The Federal Rules of Civil Procedure require that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Federal Rule of Civil Procedure 12(b)(6) allows a party to seek dismissal of a complaint or portion of a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In order to avoid dismissal under Rule 12(b)(6), a pleading party's complaint must provide "enough factual matter" to allow the case to move beyond the pleading stage of litigation; the pleader must "nudge [his or her] claims across the line from conceivable to plausible." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234-35 (3d Cir. 2008) (quoting *Bell Atlantic Co. v. Twombly*, 550 U.S. 544, 556, 570 (2007)).

3

While the decisions of the United States Supreme Court in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), represented a significant change in federal pleading standards, the United States Court of Appeals for the Third Circuit has provided clear guidance to district courts. To determine the sufficiency of a complaint under the pleading regime established by *Twombly* and *Iqbal*, a court must take the following three steps:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." *Iqbal*, 129 S. Ct. at 1947. Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 1950. Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Id.*

*Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010).

A claim is plausible on its face when the complaint "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 263 n.27 (3d Cir. 2010) (quoting *Iqbal*, 556 US. at 678). In determining whether the well-pleaded factual allegations plausibly give rise to an entitlement for relief, the court must be mindful that the matter pleaded need not include "detailed factual allegations." See *Phillips*, 515 F.3d at 231 (quoting *Twombly*, 550 U.S. at 555). A pleading party "need only put forth allegations that 'raise a reasonable expectation that discovery will reveal evidence of the necessary element[s].'" *Fowler v. UPMC Shadyside*, 578 F. 3d 203, 213 (3d Cir. 2009). However, the factual allegations "must be enough to raise a right to relief above the speculative level." *Phillips*, 515 F. 3d at 232 (quoting *Twombly*, 550 U.S. at 555). Rule 8(a)(2) "requires a 'showing' rather than a blanket assertion of an entitlement to relief." *Id.* (quoting *Twombly*, 550 U.S. at 556 n.3). "[L]egal conclusions" and "[t]hreadbare

4

recitals of elements of a cause of action, supported by mere conclusory statements, do not suffice" as bona fide factual material. *Iqbal*, 556 U.S. at 678. If a district court determines that a complaint is vulnerable to 12(b)(6) dismissal, the court must permit a curative amendment, irrespective of whether a plaintiff seeks leave to amend, unless such amendment would be inequitable or futile. *Phillips*, 515 F. 3d at 236.

## V.  DISCUSSION

Plaintiff alleges that Defendant violated the ADA by failing to keep her medical information confidential, in violation of 42 U.S.C. § 12112(d)(4)(C).[2] (See Doc. No. 1 at 3 ¶¶ 18-20.) In its Motion to Dismiss, Defendant asserts that Plaintiff fails to state a claim under section 12112(d)(4)(C) for two reasons: first, because Plaintiff is not and was not Defendant's employee, and, second, because Defendant did not obtain Plaintiff's medical information through a medical examination or inquiry. (Doc. No. 6 at 1 ¶ 2.) Because the question at hand is primarily one of statutory interpretation, the Court will begin with a brief overview of the relevant statute.

Title 42, section 12112(a) prohibits a covered entity from discriminating against a "qualified individual on the basis of a disability . . . ." 42 U.S.C. § 12112(a). Subsection (d) of Title 42, section 12112, entitled "Medical examinations and inquiries," explains that subsection (a)'s prohibition against discrimination extends to medical examinations and inquiries. 42 U.S.C. § 12112(d)(1). This subsection, which is divided into four parts, generally prohibits covered entities from conducting medical examinations of job applicants or employees and from making inquiries of job applicants or employees as to whether such applicant or employee is an

---

[2] Plaintiff also cites a regulation promulgated under the ADA in her Complaint. (See Doc. No. 1 at 3 ¶¶ 17-20.) Because this regulation essentially mirrors the statute, the Court will analyze Plaintiff's claim using caselaw developed under the relevant statute rather than the regulation.

5

individual with a disability or as to the nature or severity of such disability during certain stages of the pre-employment and employment process, subject to limited exceptions. See 42 U.S.C. § 12112(d). For example, section 12112(d)(2)[3] prohibits covered entities from conducting medical examinations of job applicants and limits the preemployment inquiries a covered entity may make of a job applicant. See 42 U.S.C. § 12112(d)(2). Similarly, section 12112(d)(4)(A) provides:

> (A) Prohibited examinations and inquiries
>
> A covered entity shall not require a medical examination and shall not make inquiries of an employee as to whether such employee is an individual with a disability or as to the nature or severity of the disability, unless such examination or inquiry is shown to be job-related and consistent with business necessity.

In addition to the business necessity exception contained in section 12112(d)(4)(A), covered entities may conduct certain examinations and inquiries as provided in section 12112(d)(4)(B), which states:

> (B) Acceptable examinations and inquiries
>
> A covered entity may conduct voluntary medical examinations, including voluntary medical histories, which are part of an employee health program available to employees at that work site. A covered entity may make inquiries into the ability of an employee to perform job-related functions.

---

[3] The text of section 12112(d)(2) provides as follows:

> (2) Preemployment
>
> (A) Prohibited examination or inquiry
>
> Except as provided in paragraph (3), a covered entity shall not conduct a medical examination or make inquiries of a job applicant as to whether such applicant is an individual with a disability or as to the nature or severity of such disability.
>
> (B) Acceptable inquiry
>
> A covered entity may make preemployment inquiries into the ability of an applicant to perform job-related functions.

6

When information is obtained pursuant to subsection (B), it is subject to the requirements of section 12112(d)(4)(C).[4] Title 42, section 12112(d)(4)(C) incorporates by reference the confidentiality and recordkeeping requirements of section (d)(3)(B) and (C), which govern information obtained regarding the medical condition or history of an applicant for employment pursuant to an employment entrance examination and require that:

> (B) information obtained regarding the medical condition or history of the applicant is collected and maintained on separate forms and in separate medical files and is treated as a confidential record, except that—
>
> > (i) supervisors and managers may be informed regarding necessary restrictions on the work or duties of the employee and necessary accommodations;
> >
> > (ii) first aid and safety personnel may be informed, when appropriate, if the disability might require emergency treatment; and
> >
> > (iii) government officials investigating compliance with this subchapter shall be provided relevant information on request; and
>
> (C) the results of such examinations are used only in accordance with this subchapter.

Thus, when a covered entity gains medical information of an employee through an acceptable examination or inquiry pursuant to section 12112(d)(4)(B), it must treat such information as a confidential medical record, subject only to a few narrowly proscribed exceptions. See 42 U.S.C. § 12112(d)(4)(C).

Having reviewed the statute under which Plaintiff brings her claim, the Court will now address Defendant's arguments in the order in which they appear in its Motion, beginning with

---

[4] Title 42, section 12112(d)(4)(C) states as follows:

(C) Requirement

Information obtained under subparagraph (B) [Acceptable examinations and inquiries] regarding the medical condition or history of any employee are subject to the requirements of subparagraphs (B) and (C) of paragraph (3).

7

whether Plaintiff may state a claim under section 12112(d)(4)(C) despite not being or having been an employee of the Defendant.

Section 12112(d)(4)(C) specifically speaks of information obtained pursuant to section 12112(d)(4)(B) (permitting "covered entities" to conduct certain evaluations of and make inquiries into the abilities of "employee[s]") regarding the medical condition or history of "any employee." See 42 U.S.C. § 12112(d)(4)(B), (C). Defendant seizes on the term "employee" and asserts that Plaintiff must be *Defendant's* employee to "be covered under 42 U.S.C. § 12112(d)(4)(C)." (See Doc. No. 7 at 4.) Plaintiff, however, notes that the language of subsection (d)(4) uses the term "covered entity," which is defined to include employers, employment agencies, labor organizations, and joint labor-management committees, see 42 U.S.C. § 12111(2), rather than "employer," and argues that Defendant need "not be an employer, much less the employer *of an employee*" for the medical inquiry and confidentiality requirements in section 12112(d)(4) to apply to Defendant. (See Doc. No. 12 at 4.) Although the Court recognizes that limiting subsection (d)(4)(C)'s application to employers of the employees discussed in subsection (d)(4) has the effect of limiting subsection (d)(4)'s applicability to covered entities that also act as employers, the Court concludes that the plain language, purpose, and structure of the statute and related caselaw all support Defendant's interpretation of the statute.

The ADA defines the term "employee" as "an individual employed by an employer." 42 U.S.C. § 12111(4). Where a statute's language is plain, "the sole function of the courts is to enforce it according to its terms[,]" *U.S. v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241 (1989) (quoting *Caminetti v. United States*, 242 U.S. 470, 485 (1917)); as long as the statutory scheme is coherent and consistent, there is generally no need for a court to inquire beyond the plain

8

language of the statute[,]" *id.* at 240-41. Section 12112(d)(4) consistently speaks of employees, with that term clearly defined in the definitional section of the Title. See 42 U.S.C. § 12111(4). To construe the term "employee" to include job applicants would require ignoring the plain language of the statute and would extend the section's purview beyond that for which Congress provided. Accordingly, the Court concludes that section 12112(d)(4) relates only to employees.

Plaintiff appears to argue that the statute's permissions, prohibitions, and requirements extend to covered entities who do not employ the individual whose medical information they possess and that these permissions, prohibitions, and requirements apply to all covered entities that possess medical information about an individual who is or once was an employee of any employer. (See Doc. No. 12 at 4.) The problem with this argument is that it is not consistent with the purpose of the provisions outlined in subsection (d)(4) or the structure of section 12112.

Although a prospective employer may wish to know whether a prospective employee has certain limitations, section 12112(d) is carefully designed to limit the nature and extent to which employers or other covered entities may conduct medical examinations or make medical inquires of prospective employees in order to prevent discrimination against qualified individuals with disabilities. See 42 U.S.C. § 12112(a), (d). Indeed, subsections (2) and (3) of section 12112(d) specifically address medical examinations and inquires that may be made by a covered entity before an individual commences employment. See 42 U.S.C. § 12112(d)(2) (discussing medical examinations and inquires at the preemployment stage); 42 U.S.C. § 12112(d)(3) (discussing medical examinations of prospective employees after an offer of employment has been made but before employment commences). They permit preemployment inquiries into the ability of the applicant to perform job related functions while prohibiting other preemployment inquiries and examinations except for examinations conducted after an offer of employment has been made

9

and where certain other conditions are present. See 42 U.S.C. § 12112(d)(2), (3). These sections address the needs of prospective employers while seeking to prevent discrimination against persons with disabilities. See 42 U.S.C. § 12112(d)(2)-(3); *Green v. Joy Cone Co.*, 278 F. Supp. 2d 526, 533-34 (W.D. Pa. 2003). If subsection (d)(4) were to apply to entities other than an employee's employer and subject them to the confidentiality provisions of section 12112(d)(4)(C) as Plaintiff suggests, covered entities other than the employer of an employee—such as an employment agency—should be able to obtain information about employees pursuant to sections 12112(d)(4)(A) and (B). This is because it is contrary to the principles of statutory construction to conclude that subsection (d)(4)(C) applies to all covered entities including employment agencies while subsections (d)(4)(A) and (B) do not when all three subsections use the same terms and are each part of the same subsection of section 12112 and because the confidentiality provisions of subsection (C) apply only to information that is obtained pursuant to subsection (B). Reading the statute to permit this, however, results in a tortured reading of the statute. Subsection (d)(4)(A) prohibits covered entities from requiring medical examinations or making inquiries of an employee, "unless such examination or inquiry is shown to be job-related and consistent with business necessity." 42 U.S.C. § 12112(d)(4)(A). Business necessities include matters such as ensuring workplace safety and cutting down on absenteeism. See *Ward v. Merck & Co.*, 226 F. App'x 131, 140 (3d Cir. 2007). It is difficult to imagine a scenario where a covered entity—such as an employment agency—that does not employ an individual would have such job-related business necessities with respect to an employee of another employer. Subsection (d)(4)(B) allows covered entities to conduct voluntary medical examinations which are part of an employee health program available to employees at that work site. 42 U.S.C. § 12112(d)(4)(B). Again, it is difficult to imagine a circumstance in which an employment agency

10

could conduct medical examinations of another employer's employees pursuant to an employee health program. Additionally, if employment agencies, as covered entities, were able to obtain information about an employee pursuant to sections 12112(d)(4)(A) and/or (B), as they should be if confidentiality provisions of section 12112(d)(4)(C) apply to them, they would be able to skirt the prohibitions of section 12112(d)(2) (prohibiting medical examinations or inquiries of job applicants regarding disabilities except for inquiries into the ability of an applicant to perform job-related functions). While section 12112(d)(2) contains prohibitions and permissions similar to those found in section 12112(d)(4), the prohibitions and permissions contained in these two subsections are not identical[5] and the Court will not read a coherent statutory scheme to permit under one subsection that which is denied under another subsection.

Section 12112(d)(2) and (3)'s discussion of medical examinations and inquires that may be made by a covered entity before an individual commences employment and the structure of section 12112(d) generally provide further support for the conclusion that section 12112(d)(4) applies only to the employers of the employees discussed in that subsection. "The ADA identifies three distinct time periods in which the standards for medical review are enumerated: Pre-offer, post-offer and employment." *Green*, 278 F. Supp. 2d at 533; see also *Chedwick v. Univ. of Pittsburgh Med. Ctr.*, No. 07-806, 2011 U.S. Dist. LEXIS 43239, at *33 (W.D. Pa. Apr. 21, 2011) (discussing sections 12112(d)(2)-(4) and explaining that these "provisions of the ADA concerning medical examinations and inquiries relate to three different stages of an employer's

---

[5] For example, section 12112(d)(2) prohibits all preemployment medical examinations before an offer of employment is made. See 42 U.S.C. §§ 12112(d)(2), (3). Section 12112(d)(4)(B) permits "covered entities" to conduct certain medical examinations. 42 U.S.C. § 12112(d)(4)(B). If employment agencies, acting for the purpose of procuring employees for an employer or procuring for employees opportunities to work for an employer, or prospective employers, in contemplation of extending an offer to an individual currently employed elsewhere, were able to conduct medical examinations of employees of other employers as "covered entities" under section 12112(d)(4)(B) they would seemingly be able to avoid section 12112(d)(2)'s prohibition on preemployment medical examinations.

11

relationship with an employee"). The pre-offer stage is governed by section 12112(d)(2). See 42 U.S.C. § 12112(d)(2) ("Preemployment"); Green, 278 F. Supp. 2d at 534. The following subsection, subsection (d)(3), governs the post-offer stage wherein an offer of employment has been extended to a job applicant but the prospective employee has not yet commenced employment. See 42 U.S.C. § 12112(d)(3); Green, 278 F. Supp. 2d at 534. Finally, subsection (d)(4) establishes guidelines and requirements for medical examinations and inquiries of current employees. See Chedwick, 2011 U.S. Dist. LEXIS 43239, at *34; Green, 278 F. Supp. 2d at 534. Construing section 12112(d)(4) to extend to covered entities other than an individual's employer would not fit with this statutory structure because under such a reading the employee referenced in subsection (d)(4) would not be a current employee of the covered entity that is not the individual's employer. Further, the subsection would likely apply whenever information regarding the medical condition or history of an employee is obtained by a covered entity, regardless of whether that individual is currently employed,[6] despite the fact that the structure of the statute contemplates that section 12112(d)(4) will govern information obtained during periods of employment, see Chedwick, 2011 U.S. Dist. LEXIS 43239, at *33; Green, 278 F. Supp. 2d at 533. Therefore, if the statute is read as Plaintiff advocates, the careful structure of the statute—which is broken into four subsections, one outlining a general rule, see 42 U.S.C. §

---

[6] Suppose, for example, employer A obtained information relating to a medical condition of John Doe, his employee, while John Doe was in employer A's employ. Under Plaintiff's proposed reading of the statute, if John Doe resigned from his employment with employer A and employer B obtained information from employer A regarding John Doe's medical condition during John Doe's subsequent period of unemployment, section 12112(d)(4) would apply to employer B, even though the time during which employer B obtained John Doe's information could not be characterized as a period of "employment" for John Doe. Whether it would be desirable for the statute to govern this scenario is not for the Court to decide. The structure of the statute contemplates that section 12112(d)(4) will govern information obtained during periods of employment, see Chedwick v. Univ. of Pittsburgh Med. Ctr., No. 07-806, 2011 U.S. Dist. LEXIS 43239, at *33 (W.D. Pa. Apr. 21, 2011); Green v. Joy Cone Co., 278 F. Supp. 2d 526, 533 (W.D. Pa. 2003), and a reading of the statute that undermines this structure is suspect.

12112(d)(1), and the remaining three each addressing a distinct period in the application-to-employment process, see 42 U.S.C. § 12112(d)(2)-4,—crafted by Congress would be undermined.

Existing caselaw further supports Defendant's reading of the statute. Courts discussing challenges to a practice or policy of an employer that allegedly violates the ADA's prohibition on medical examinations or inquiries by a covered entity have required a plaintiff to demonstrate that "(1) the plaintiff is an employee of the defendant and (2) the challenged policy either mandates a medical examination or requires disclosure of information tending to evince a disability" to establish a prima facie case under 12112(d)(4). *Pa. State Troopers Ass'n v. Miller*, 621 F. Supp. 2d 246, 253, 250-53 (M.D. Pa. 2008); accord *Scott v. Allied Waste Servs. of Bucks-Mont*, No. 10-105, 2010 U.S. Dist. LEXIS 136202, at *14 (E.D. Pa. Dec. 23, 2010) (citing *Pa. State Troopers Ass'n*, 621 F. Supp. 2d at 250-51). Because it would be strange to require a plaintiff to be an employee of the defendant to state a claim for a violation of the general proscriptions of section 12112(d)(4) but not to state a claim for a violation of the confidentiality requirements contained in the same subsection, these cases support Defendant's reading of the statute. Finally, at least one district court in this circuit has concluded that a plaintiff must be an employee of the defendant at the time medical information about an employee is sought for the confidentiality provisions of section 12112(d) to apply. See *Conneen v. MBNA Am. Bank, N.A.*, 182 F. Supp. 2d 370, 375-76, 381 (D. Del. 2002) (finding no breach of confidentiality under the ADA when lawyer for defendant contacted doctor regarding EEOC conciliation because "although the ADA does state that certain medical information obtained *at the request* of the employer must be kept confidential, see 42 U.S.C. § 12112(d), [plaintiff] was not an employee of [defendant] at the time the information was sought, so these provisions are inapplicable."). After

13

considering the plain language, purpose, and structure of the statute and relevant caselaw, the Court concludes that Plaintiff may not state a claim against Defendant pursuant to 42 U.S.C. § 12112(d)(4)(C) without demonstrating that Plaintiff was an employee of the Defendant at the time the information regarding Plaintiff's medical condition or history was obtained by Defendant.

In her Complaint Plaintiff does not allege that she was an employee of Defendant at any time. (See generally Doc. No. 1.) Rather, Plaintiff specifically states that she was an employee at an independent agency where State Farm insurance was sold (Doc. No. 1 at 2 ¶ 7) and the Complaint makes clear that the relationship between Plaintiff and Defendant was pursuant to Defendant's role as an employment agency for individuals seeking employment with independent agents who sell State Farm insurance. (See *id.* at 2 ¶¶ 9-13.) As a result, Plaintiff has not stated a claim upon which relief can be granted.

In her Brief in Opposition to Defendant's Motion to Dismiss, Plaintiff states that "[i]f Sheriff is better categorized as an applicant under the ADA because of her use of Defendant as an employment agency, Sheriff should be granted leave to amend her Complaint *to reflect that section of the statute.*" (Doc. No. 12 at 6 (emphasis added).) Presumably, Plaintiff seeks to amend her Complaint to state a claim for Defendant's failure to maintain the confidentiality of Plaintiff's medical information—as she has in her current Complaint—albeit under section 12112(d)(2), which speaks of applicants and relates to the pre-offer stage of employment, rather than section 12112(d)(4).[7] However, the differences between sections (d)(2) and (d)(4) are not limited to their applicability to job applicants versus employees. In addition to relating to different stages of the employer-employee relationship, see *Chedwick*, 2011 U.S. Dist. LEXIS

---

[7] For the text of section 12112(d)(2), see *supra* note 3.

43239, at *33, section 12112(d)(2), unlike section 12112(d)(4), does not contain language specifically relating to confidentiality or a covered entity's handing of information obtained pursuant to an acceptable medical inquiry. Compare section 12112(d)(2) with section 12112(d)(4). Indeed, it is even unclear whether Plaintiff's request to amend her Complaint "to reflect *that* section of the statute" references section 12112(d)(2) or (d)(3). (See Doc. No. 12 at 6 (referencing subsections (d)(2) and (d)(3) immediately prior to requesting leave to amend Complaint to reflect "that section of that statue").) Without more specific information about the manner in which Plaintiff would amend her Complaint, the Court is unsure of the nature of Plaintiff's proposed amendment. Consequently, any analysis regarding the viability of a cause of action asserted pursuant to section 12112(d)(2) (or section 12112(d)(3)) or the futility of amendment would require speculation about the form such an amended complaint would take.[8] The Court declines to engage in such speculation and therefore, at this stage of the litigation, cannot say with certainty that permitting Plaintiff to amend her Complaint would be futile. Therefore, Plaintiff's motion to dismiss will be granted with leave to amend. Should Plaintiff choose to amend her Complaint, Defendant may then make a renewed motion to dismiss.

Although the Court will grant Defendant's Motion to Dismiss because Plaintiff is not and was not Defendant's employee, the Court proceeds to address Defendant's second argument because it may have relevance to any amended Complaint and because it provides an alternative ground for the Court's decision to grant Defendant's Motion to Dismiss.

---

[8] In its Reply, Defendant asserts and briefly argues that neither 42 U.S.C. §§ 12112(d)(2) nor (d)(3) provide Plaintiff with any relief and therefore amendment will be futile. (See Doc. No. 21 at 4.) Although the common-sense arguments asserted by the Defendant have some facial appeal, because the nature of Plaintiff's proposed amendment is not clear and the arguments asserted by Defendant have not been fully developed and briefed by both parties as they will be if Plaintiff is provided with an opportunity to amend, the Court declines to render a decision on these arguments at this time.

15

As stated above, section 12112(d)(4)(C) subjects information obtained pursuant to section 12112(d)(4)(B) to recordkeeping and confidentiality requirements. See 41 U.S.C. § 12112(d)(4)(C) (incorporating by reference 41 U.S.C. § 12112(d)(3)(B), (C)). Therefore, whether Plaintiff may state a claim pursuant to section 12112(d)(4)(C) depends in part on whether the information was obtained pursuant to subsection (B). Section 12112(d)(4)(B) permits certain medical examinations and inquires. Defendant correctly points out that nowhere in the Complaint does Plaintiff allege that Defendant gained information about her medical condition as a result of a medical examination. (See Doc. No. 7 at 8; see generally Doc. No. 1.) Rather, Plaintiff alleges that Defendant learned of her medical condition when *Ms. Springer shared* the information with Ms. Gump, a State Farm field representative and employee, without Plaintiff's permission. (Doc. No. 1 at 2 ¶ 8.) Defendant asserts that this does not constitute a medical inquiry, and thus any alleged disclosure by Defendant is not governed by 42 U.S.C. § 12112(d)(4)(C). (See Doc. No. 6 at 1 ¶ 2; Doc. No. 7 at 5-9; Doc. No. 21 at 5-6.)

Courts have found that the adjective "medical" in the statutory language of section 12112(d) modifies both examinations *and* inquires, *EEOC v. Thrivent Financial for Lutherans*, 700 F.3d 1044, 1049-50 (7th Cir. 2012); see *Doe v. U.S. Postal Service*, 317 F.3d 339, 344 (D.C. Cir. 2003) (discussing "medical inquir[ies]" and inquires "into employees' medical conditions"), and have construed what constitutes a medical inquiry under the ADA in accordance with the plain language of the statute. See *Thrivent*, 700 F.3d at 101-52 (finding that no medical inquiry was made under section 12112(d)(4) when employer asked employee for reason for employee's absence from work and did not know employee was ill or physically incapacitated before initiating interaction); *EEOC v. C.R. England, Inc.*, 644 F.3d 1028, 1047-48 (10th Cir. 2011) (holding that information voluntarily provided to employer by employee about employee's HIV

status was not protected by section 12112(d)(4) because disclosure was not the result of "any sort of examination or inquiry"); *Cash v. Smith*, 231 F.3d 1301, 1307 (11th Cir. 2000) (finding section 12112(d)(4) inapplicable where disclosure of medical information was not the result of a medical examination but of a voluntary disclosure made by employee to her supervisor); *Yoder v. Ingersoll-Rand Co.*, 31 F. Supp. 2d 565, 569 (N.D. Ohio 1997) (discussing plain language of statute and declining to "engraft onto the law requirements that Congress has not made"). A general inquiry directed to an employee by an employer who has no preexisting knowledge that the employee was ill or incapacitated which nontheless results in the employee sharing medical information will not subject a covered entity to liability under 42 U.S.C. § 12112(d)(4) if that information is not kept in accordance with the recordkeeping and confidentiality requirements of section 12112(d)(4)(C). See *Thrivent*, 700 F.3d at 1050-1052. Rather, with respect to inquiries, liability may attach under section 12112(d)(4)(C) only if a covered entity conducts a *medical* inquiry into the ability of an employee to perform job-related functions and subsequently fails to keep that information confidential or in accordance with the other requirements of section 12112(d)(4)(C). See *id.* at 1050; see also 42 U.S.C § 12112(d)(4).

In the instant case, Plaintiff does not allege that Defendant made *any* inquiry about her. (See generally, Doc. No. 1.) As a result, Plaintiff has not stated a claim for relief under 42 U.S.C. § 12112(d)(4) on the facts alleged in her Complaint.

Plaintiff correctly notes that several of the cases cited in Defendant's Brief in Support hold that information voluntarily offered or disclosed by an employee does not fall under the statute's purview. (See Doc. No. 12 at 6-7.) These cases so hold, however, based on the language of the statute, see *Thrivent*, 700 F.3d at 1050, 1049-52; *C.R. England, Inc.*, 644 F.3d at 1047; *Cash*, 231 F.3d at 1307, which applies to information obtained pursuant to a medical

17

examination or inquiry, see 42 U.S.C. § 12112(d)(4). Here, although the information regarding Plaintiff's medical condition was not voluntarily disclosed by Plaintiff, it also was not obtained pursuant to a medical examination or inquiry, as section 12112(d)(4)(C) requires. Therefore, although it can be said that the medical information at issue here was not voluntarily given to Defendant by Plaintiff, this does not save Plaintiff's argument. The statute, by its terms, does not extend protection to all information regarding the medical condition or history of any employee except that which is voluntarily shared by an employee. Rather, it covers information that is obtained pursuant to a medical examination or inquiry, see 42 U.S.C. § 12112(d)(4)(B)-(C); see, e.g., *Thrivent*, 700 F.3d at 1050; *Doe*, 317 F.3d at 340, 343-44,—a category of information that Courts have correctly recognized does not include information obtained pursuant to a voluntary disclosure, see, e.g., *Thrivent*, 700 F.3d at 1049-52; *EEOC v. Ford Motor Credit Co.*, 531 F. Supp. 2d 930, 937 (M.D. Tenn. 2008). The absence of a voluntary disclosure by Plaintiff does not cause the statutory language to apply to the set of facts asserted in Plaintiff's Complaint; Plaintiff must plead the existence of a medical examination or inquiry to state a claim under 42 U.S.C. § 12112(d)(4)(C).

## VI. CONCLUSION

For the foregoing reasons, Plaintiff's Complaint will be dismissed with leave to amend. An appropriate order follows.

# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHELLE Q. SHERIFF, ) | |
| ) | |
| Plaintiff, ) | CIVIL ACTION NO. 3:12-cv-243 |
| ) | JUDGE KIM R. GIBSON |
| v. ) | |
| ) | |
| STATE FARM INSURANCE COMPANY, ) | |
| ) | |
| Defendant. ) | |

## ORDER

**AND NOW,** this **13th** day of August, 2013, this matter coming before the Court on Defendant's Motion to Dismiss Plaintiff's Complaint (Doc. No. 6) and Plaintiff's opposition thereto (Doc. No. 12), and in accordance with the foregoing Memorandum, **IT IS HEREBY ORDERED** that the Motion is **GRANTED WITH LEAVE TO AMEND. IT IS FURTHER ORDERED** that Plaintiff is granted twenty-one (21) days in which to file an amended complaint, as permitted by this Order. In the event that an amended complaint is filed, **IT IS FURTHER ORDERED AS FOLLOWS:**

1. ADR shall be completed within sixty (60) days of the filing of the Amended Complaint;

2. The parties shall make the required disclosures identified in Federal Rule of Civil Procedure 26(a)(1)(A), (B), (C), and (D) on or before fourteen (14) days after the filing of the Amended Complaint;

3. The parties shall complete all fact discovery within one hundred and twenty (120) days after the filing of the Amended Complaint; and

4. The Initial Scheduling Order (Doc. No. 20) shall be construed as incorporating the amended deadlines set forth in this Order.

BY THE COURT:

*/s/ Kim R. Gibson*

**KIM R. GIBSON,**
**UNITED STATES DISTRICT JUDGE**